IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

UNITED STATES OF AMERICA,

                   Plaintiff

      v.

ADAM MEECE,

                  Defendant.

REPORT AND
RECOMMENDATION

08-cr-95-bbc

_____

## REPORT

The grand jury charged defendant Adam Meece with being a felon in possession of two handguns in violation of 18 U.S.C. § 922(g)(1). Meece moved to suppress evidence taken from a search of his girlfriend's house and to suppress his post-arrest statements. *See* dkt. 35. Meece subsequently entered a conditional guilty plea, reserving his right to suppress the evidence upon which his conviction rests. For the reasons stated below, I am recommending that the court deny Meece's motion to suppress in all parts.

On September 26, 2008, this court held an evidentiary hearing. Having heard and seen the witnesses testify, having considered the affidavits and other exhibits, and having made credibility determinations, I find the following facts:

## FACTS

In April 2008, Adam Meece was serving a state term of extended supervision following his release from prison on a felony conviction. Pursuant to state statutes and administrative regulations, Meece was subject to re-incarceration for violating his supervision conditions and could be taken into custody at the direction of the probation office while it investigated alleged violations. Indeed, under state law, people on extended supervision "shall be taken into custody

and detained" if they are alleged to have been involved in dangerous conduct.  Wis. Stat. §
328.22(1).  Reasonable suspicion of dangerous conduct is sufficient to justify arresting a person
serving a term of extended supervision.

On or before April 17, 2008, Madison Police Officer Denise Markham received a phone
tip from an anonymous source accusing Meece of possessing drugs and guns at his girlfriend's
house.  Officer Markham quizzed down the informant to assure that she was getting a credible
tip. So, the informant explained the nature of his relationship with Meece and with Meece's
girlfriend (Jami Lee), where Meece worked, what kind of car Meece drove, what the three
handguns looked like, and where the drugs and guns were cached in Lee's home at 69 North
Walbridge in Madison.  Convinced that the informant was being straight with her, Office
Markham contacted Meece's probation officer to share this information.

Based on officer Markham's report, Meece's probation officer issued a probation warrant
for Meece's arrest. The police arrested Meece that afternoon him while he rode home from work
with his brother Calvin.  After taking him into custody, they asked Meece where he lived, and
he responded that he lived with his parents.  Officer Markham specifically asked Meece if he
lived at 69 North Walbridge; he said he did not, although he acknowledged that his girlfriend
lived there with their children.  Officer Markham asked Meece if he had a problem with officers
going and seeking Lee's consent to search; Meece expressed indifference because Lee probably
wasn't even home.

A trio of officers drove to 69 North Walbridge to seek Lee's consent to search.  Officer
Markham and Sheriff's Deputy Keith Severson both were in uniform; Monona Police Officer
Jerry Winge was in plain clothes.   Knowing from experience that sometimes people pretend not

2

to be home and decline to answer the door when they see the police knocking, the officers agreed that Officer Winge would knock on Lee's door while Officer Markham and Deputy Severson hid from sight.   (Apparently Officer Markham's canine partner Sadie waited in the car).   Lee responded when Officer Winge knocked; Officer Markham and Deputy Severson popped forward to confront the surprised Lee.  Officer Winge left.

The two uniformed officers asked to step in and Lee acquiesced.  Inside the threshold, Officer Markham advised Lee that Meece just had been arrested on a probation hold because of Officer Markham's information that Meece was keeping guns upstairs in Lee's bedroom and maybe some keeping some cocaine in the kitchen.  Lee appeared dumbfounded.

Officer Markham asked permission specifically to go get the guns out of the house.  Lee responded that she had children in the house and did not want the guns there.   Officer Markham asked if she could go upstairs to retrieve them.  Lee motioned for Officer Markham to proceed; Officer Markham told Lee that she wanted Lee to come with her.  Officer Markham did not threaten to obtain a search warrant if Lee refused consent.  Officer Markham did not yell at or otherwise browbeat Lee.

Lee took Officer Markham to the upstairs bedroom.  Officer Markham asked Lee for permission to search the dresser and the closet, received permission, and searched without success.  Officer Markham then went over to the bed and lifted the corner of the mattress.  Two handguns were nestled between the mattress and the box spring.  Lee appeared to be genuinely shocked.  At Officer Markham's request, Lee provided a bag for Officer Markham to handle the guns without touching them.  They went downstairs to talk with Deputy Severson, who had found a scale, baggies and paraphernalia in the kitchen, but no cocaine.  Officer Markham told

Lee it would be quicker if Officer Markham could bring in her dog Sadie to search for the cocaine.

Lee was okay with this in principle but announced that she had to go pick up her son at daycare and asked the officers to leave while she did so.  Officer Markham responded that they could not leave because they already had found some contraband and believed there was more.  They were willing to suspend their search while Lee was gone and resume when she returned.  But, continued Officer Markham, if Lee instead was asking that the police completely stop searching and leave, then Officer Markham was going to call her supervisor to explore the feasibility of drafting and submitting  a search warrant request.  Lee responded that she just wanted to go get her kids.  In light of that, the officers waited for her to return.

Lee drove off to retrieve her son.[1]  Officer Markham retrieved her dog, Sadie, from the squad car to continue the search.  Lee returned within minutes and accompanied Officer Markham and Sadie while they searched upstairs.   At some point the police found $3400 cash hidden in the basement rafters.  Lee claimed that some of that money was hers from a tax refund.

Soon thereafter, Meece's brother Calvin arrived and angrily demanded that Lee tell the police to leave the house and directly confronted the officers to insist that they stop searching.  Lee acquiesced to Calvin's demands and told the officers to leave.  Officer Markham agreed to stop searching but declined to leave the premises until she contacted her supervisor to see if MPD had additional personnel available to draft a search warrant request.  It's not clear on this

---

[1] Lee testified that she picked up her son (singular); Officer Markham recalls Lee picking up and bringing home "her kids," who came in and sat on the couch where Sadie came over to greet them.

record how this all got resolved; it appears that the officers left without seeking a warrant.  Police never found the third gun, described by the informant as a TEC-9.

Later that day Officer Markham undertook a custodial interrogation of Meece at the police station.  Officer Markham properly *Mirandized* Meece, told him what they had found, and obtained incriminating statements.  Later in the 57 minute interrogation, Officer Markham told Meece that she was not going to take his case to federal court.  Meece agreed to cooperate with Officer Markham in her drug investigation, but was unable to provide direct assistance because his probation officer would not agree to release him from the state hold.

Officer Markham kept her word and did not seek federal prosecution of Meece.  The U.S. Attorney's Office found out about Meece and his firearms during its review of other investigative targets and made its own determination to prosecute him for a § 922(g) violation.

## ANALYSIS

Meece seeks to suppress the evidence seized from Lee's residence and his admissions to Officer Markham during his custodial interrogation.  Meece offers a variety of reasons to suppress: (1) his initial arrest was illegal; (2) Lee did not voluntarily consent to the home search; and (3) his subsequent statements were derived from the illegal search. *See* dkt. 35.  Meece is not pursuing his claim that the police broke their promise not to prosecute him federally, because the the government has agreed not to use any statements Meece made after Officer Markham made this promise.[2]

---

[2]  Officer Markham could not unilaterally bind the U.S. Attorney's Office, so Meece did not have immunity from federal prosecution, *See United States v. Fuzer*, 18 F.3d 517, 520-21 (7th Cir. 1994).

I. Meece's Arrest

From the amount of ink Meece devotes to this argument in both of his briefs, it appears that Meece is most upset by what he views as a bogus arrest orchestrated by Officer Markham. Duly noted. Why is this relevant to Meece's suppression motion? Lee argues that his arrest "likely was one factor . . . that convinced Ms. Lee to consent to the search." Brief in Support, dkt. 52 at 4. But Lee never said this and she didn't imply it. *See* transcript, dkt. 50, at 47- 57. To the contrary, Lee professed indifference to Meece's latest arrest, having already been there and done that. *Id.* at 55. Instead, Lee alleged that she felt compelled to consent to the search because the officers threatened that if she did not, then she would not be allowed to pick up her sone from daycare because she would have to stay with them for hours while they obtained a search warrant, which also would result in officers tearing apart her house. *id.* at 50-51.

Application of the exclusionary rule must bear some relation to the purposes that the rule is to serve. *United States v. Villegas*, 495 F.3d 761, 769 (7th Cir. 2007). Therefore, exclusion is unjustified when the alleged error is not in the causal chain leading to the challenged evidence. *United States v. Mikos*, 539 F.3d 706, 710 (7th Cir. 2008) (*citing Hudson v. Michigan*, 547 U.S. 586 (2006). Here, the officers' wish to search Lee's home was triggered by the informant's tip, not by Meece's arrest. Meece's arrest had zero impact on Lee's consent to search: she testified that Meece's arrest was absolutely inconsequential to her thought process. Because the arrest was not part of the causal chain, it cannot be a basis to suppress evidence seized during the search.

---

However, any statements that Meece made to Officer Markham after she made this representation could be suppressed as involuntary, *see United States v. Cichon* 48 F.3d 269, 272 (7th Cir. 1995).

6

Meece could have skipped past the search and challenged his post-arrest admissions on the ground that he wouldn't have been in custody for this interrogation but for his illegal arrest. *See, e.g., United States v. Reed*, 349 F.3d 457, 463 (7th Cir. 2003). But Meece never made or developed this argument, which constitutes waiver. *See, e.g., United States v. Useni*, 516 F.3d 634, 658 (7th Cir. 2008). Even if this argument were before the court, it would fail. Meece was serving a state sentence of extended supervision and therefore was subject to administrative detention upon reasonable suspicion that he had engaged in new criminal conduct. *Knox v. Smith*, 342 F.3d 651, 657 (7th Cir.  2003), *citing United States v. Knights*, 534 U.S. 112, 122 (2001). Reasonable suspicion is something more than a hunch but less than probable cause, existing when there is some objective manifestation that the suspect is engaged in prohibited activity. *Knox*, 342 F.3d at 659. Here, an anonymous informant provided Officer Markham with current, richly detailed information  about Meece's drug dealing and weapons possession, identifying not only the address but the rooms in the house where the contraband would be found and specifying the make and model of Meece's handguns. Officer Markham quizzed down her informant to satisfy herself that the CI had a basis for making these claims; she then was able to corroborate portions of the tip. This is enough to establish reasonable suspicion. *See United States v. Ganser*, 315 F.3d 839, 843 (7th Cir. 2003).

## II. Lee's Consent To Search

This is the crux of Meece's suppression motion. Its outcome depends primarily on which competing version of events I credit. As the facts found above demonstrate, I have accepted Officer Markham's version of events notwithstanding Meece's attack on her trustworthiness.

The Fourth Amendment accommodates warrantless searches when police receive voluntary consent to search.  The government must prove by a preponderance of the evidence that consent was freely and voluntarily given.  Whether consent is voluntary is a question of fact, dependent upon the totality of the circumstances.  Relevant factors include the consentor's age, intelligence and education; whether she was advised of her right to refuse; whether she had been detained before giving his consent; whether consent was immediate or was prompted by repeated requests by the authorities; whether any physical coercion was used; and whether the defendant was in police custody.  *See, e.g., United States v. Figueroa-Espana*, 511 F.3d 696, 705 (7th Cir. 2007); *United States v. Sandoval-Vasquez*, 435 F.3d 739, 744 (7th Cir. 2006).

These factors cut in both directions with Lee, but ultimately they miss the heart of her challenge: she was coerced to consent by Officer Markham's threat to keep Lee at the house while police sought a search warrant, thereby preventing Lee from retrieving her son from daycare.  If this contention were true, it would be compelling: although police are not forbidden from playing on the consentor's anxieties, fears and uncertainties, they cross the constitutional line when they exploit those anxieties to the point that she is unable to make a rational decision about whether to consent.  *Cf. United States v. Westbrook*, 125 F.3d 996, 1005-06 (7th Cir. 1997) (confession case).  But I have concluded that Officer Markham did not make this threat; therefore, it is not a factor in the voluntariness equation.  *E.g. United states v. Johnson*, 495 F.3d 536, 542 (7th Cir. 2007).

Lee, by counsel, challenges Officer Markham's truthfulness and Deputy Severson's attentiveness.  This court is aware that law enforcement agents, including task force members, have agendas, play hardball with suspects and acquaintances, and spin their testimony.  All this

8

being true, in this particular case I have accepted the government's version of the key points. Both Officer Markham and Deputy Severson are clear and consistent on how they entered Lee's home and how Lee reacted when told that Meece surreptitiously was storing handguns in the house.  I have accepted their version of how the two firearms were found under the mattress. Not to be cavalier, but for the purposes of this §922 prosecution, whatever happened later is irrelevant.

For what it's worth, I have found that the officers never told Lee that they would detain her at her home if she made them seek a search warrant.  Under *Segura v. United States*, 468 U.S. 796 (1984), the police knew that they could secure Lee's house while they sought a warrant; they had no need to keep Lee around and no need to prevent her from retrieving her child (or children) from daycare.  Having already found the two handguns they also had probable cause to search, so  they could have obtained a warrant if this course had been necessary.  Perhaps they pressed Lee for consent in order to avoid the hassle of having to prepare a warrant, but I have found no improper threats.

Eventually, Calvin Meece showed up and started yelling at everybody.  Undoubtedly Lee found (and finds) herself in a tight spot with the Meece family, which could have led her to recall more resistence on her part to Officer Markham's requests than actually occurred.  In any event, I have found no coercion by the police that overbore Lee's free will.  The government has met its burden of establishing that Lee's consent to search was voluntary at every phase.

III. Meece's Post-Arrest Statements

As noted at the outset, Meece's motion to suppress his post-arrest statements now is limited to his claim that these statements were derived from an illegal search. Because the search was legal, Meece's statements should not be suppressed.

## RECOMMENDATION

Pursuant to 42 U.S.C. § 636(b)(1)(B) and for the reasons stated above, I recommend that this court deny in all respects defendant Adam Meece's motion to suppress evidence.

Entered this 13th day of January, 2009.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
120 N. Henry Street, Rm. 540
Post Office Box 591
Madison, Wisconsin  53701

Chambers of                                                                      Telephone
STEPHEN L. CROCKER                                              (608) 264-5153
U.S. Magistrate Judge

January 13, 2009

Rita Rumbelow
Assistant U.S. Attorney
P.O. Box 1585
Madison, WI 53701-1585

William Jones
PO Box 44188
Madison, WI 53744

              Re:___United States v. Adam Meece
                      Case No. 08-CR-095-C

Dear Counsel:

        The attached Report and Recommendation has been filed with the court by the United
States Magistrate Judge.

        The court will delay consideration of the Report in order to give the parties an
opportunity to comment on the magistrate judge's recommendations.

        In accordance with the provisions set forth in the newly-updated memorandum of the
Clerk of Court for this district which is also enclosed, objections to any portion of the report
may be raised by either party on or before January 26, 2009, by filing a memorandum with the
court with a copy to opposing counsel.

        If no memorandum is received by January 26, 2009, the court will proceed to consider
the magistrate judge's Report and Recommendation.

                                        Sincerely,

                                        Connie A. Korth
                                        Secretary to Magistrate Judge Crocker

Enclosures
cc:      Honorable Barbara B. Crabb, District Judge

## MEMORANDUM REGARDING REPORTS AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b), the district judges of this court have designated the full-time magistrate judge to submit to them proposed findings of fact and recommendations for disposition by the district judges of motions seeking:

(1) injunctive relief;

(2) judgment on the pleadings;

(3) summary judgment;

(4) to dismiss or quash an indictment or information;

(5) to suppress evidence in a criminal case;

(6) to dismiss or to permit maintenance of a class action;

(7) to dismiss for failure to state a claim upon which relief can be granted;

(8) to dismiss actions involuntarily; and

(9) applications for post-trial relief made by individuals convicted of criminal offenses.

Pursuant to § 636(b)(1)(B) and (C), the magistrate judge will conduct any necessary hearings and will file and serve a report and recommendation setting forth his proposed findings of fact and recommended disposition of each motion.

Any party may object to the magistrate judge's findings of fact and recommended disposition by filing and serving written objections not later than the date specified by the court in the report and recommendation.  Any written objection must identify specifically all proposed findings of fact and all proposed conclusions of law to which the party objects and must set forth with particularity the bases for these objections.  An objecting party shall serve and file a copy

of the transcript of those portions of any evidentiary hearing relevant to the proposed findings or conclusions to which that party is objection.  Upon a party's showing of good cause, the district judge or magistrate judge may extend the deadline for filing and serving objections.

After the time to object has passed, the clerk of court shall transmit to the district judge the magistrate judge's report and recommendation along with any objections to it.

The district judge shall review de novo those portions of the report and recommendation to which a party objects.  The district judge, in his or her discretion, may review portions of the report and recommendation to which there is no objection.  The district judge may accept, reject or modify, in whole or in part, the magistrate judge's proposed findings and conclusions.  The district judge, in his or her discretion, may conduct  a hearing, receive additional evidence, recall witnesses, recommit the matter to the magistrate judge, or make a determination based on the record developed before the magistrate judge.

**NOTE WELL: A party's failure to file timely, specific objections to the magistrate's proposed findings of fact and conclusions of law constitutes waiver of that party's right to appeal to the United States Court of Appeals.  *See United States v. Hall,* 462 F.3d 684, 688 (7th Cir. 2006).**